UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ANTONIA MACIAS, | ) | No. CV 04-5947-PLA |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on July 21, 2004, seeking review of the Commissioner's denial of benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on August 16, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 1, 2005, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

## II.

## BACKGROUND

Plaintiff was born on May 22, 1944. She has a fifth grade education and past work experience as a machine operator. [See Administrative Record, "AR", at 60, 72, 77, 84-89.]

Plaintiff filed an application for supplemental security income on October 11, 2001. Plaintiff alleged that her disability due to diabetes, arthritis and high blood pressure, which result in back and bone aches, headaches and dizziness, began on November 1, 1990.[1] [AR at 60-62, 71.] After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 54.] A hearing was held on July 23, 2003. Plaintiff appeared with counsel and testified on her own behalf. [AR at 293-304.] On October 8, 2003, the ALJ concluded that plaintiff was not under a disability and thus not entitled to benefits. [AR at 16-19.]

When the Appeals Council denied review on May 25, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

---

[1] Plaintiff's request to reopen a prior determination concerning on-going disability "since 1982/1990" was denied by the Administrative Law Judge [AR at 16-17], a ruling that plaintiff does not contest herein.

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving social security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting the ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his or her past work; if so, the claimant is not

disabled and the claim is denied. Id. The plaintiff has the burden of proving that he or she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he or she can perform other substantial gainful work available in the national economy; the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity in the past 15 years. [AR at 17.] She thus meets step one of the five-step process. At step two, the ALJ concluded that plaintiff's impairments -- hypertension, diabetes mellitus, and osteoarthritis -- are not severe. [AR at 19.] Accordingly, the ALJ determined that plaintiff was not disabled and not entitled to benefits, and did not complete the five-step sequential evaluation. [AR at 19.]

V.

THE ALJ'S DECISION

In the sole issue presented in the Joint Stipulation, plaintiff argues that the ALJ failed to properly consider the opinions of plaintiff's examining physician. For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

A. THE EVIDENCE

Plaintiff was examined by Dr. Omar Fadeel on December 19, 2001. [AR at 107-11.] Upon examination, Dr. Fadeel found plaintiff to be in no acute distress, and observed that she was able to sit down and get up, and get on and off the examination table, without difficulty. Although she used a cane, he determined that she was able to walk without the cane, but "pretended to have pain." [AR at 108.] Her back revealed no tenderness, her straight-leg raise test was negative, and the range of motion in her back was within normal limits. Her range of motion at her shoulders,

elbows, wrists, hands, hips, knees and ankles was also normal. [AR at 108-09.] Her strength was normal in all her extremities, and her gait was within normal limits. [AR at 110.] Dr. Fadeel diagnosed plaintiff with hypertension, diabetes mellitus type II, and arthralgia. Nevertheless, he concluded that of her joints did not reveal any abnormality, and there was no evidence of limitation of movement, redness, heat, or swelling of the joints. He further concluded that plaintiff's use of a cane "is highly suspicious and questionable as she was able to stand and had normal posture. She was able to move about but was faking problems with her gait." [AR at 110.] He concluded that plaintiff would be able to lift and carry 50 pounds occasionally and 25 pounds frequently, and could walk, stand and sit for 6 hours in an 8 hour day with appropriate breaks. [AR at 110.]

Dr. Howard Rubenstein, a stage agency physician, reviewed the records and concluded on January 23, 2002, that Dr. Fadeel's limitations on plaintiff were "overly restrictive." He found that her three illnesses "individually or collectively are non-severe." [AR at 113.] On August 26, 2002, Dr. Elliott Gilpeer, also a state agency physician, completed a Physical Residual Functional Capacity Assessment form in which he determined that no exertional limitations had been established. He found that Dr. Fadeel's conclusions concerning plaintiff's physical limitations were "not supported by the evidence." [AR at 116-23.]

On April 30, 2003, plaintiff submitted additional documentation concerning her medical care from November 4, 1999, to June 19, 2000. [AR at 129-78.] Among other things, those records show that x-rays of plaintiff's lumbar spine in February, 2002, revealed mild generalized degenerative joint disease of the lumbar spine, and generalized osteopenia.[2] [AR at 150.]

On June 9, 2003, plaintiff submitted additional records from June 2, 2000, through April 29, 2003. [AR at 179-279.] Those records show, among other things, that in June, 2000, she had a normal abdominal ultrasound [AR at 275], and x-rays revealed that her lumbar spine was normal. [AR at 277.] In March, 2001, osteoarthritis of the thoracic spine was noted based on an x-ray, her chest x-ray was normal [AR at 244], and she had another normal ultrasound of her abdomen. [AR

---

[2] Osteopenia is reduced bone mass, or any decrease in bone mass below the normal. Dorland's Illustrated Medical Dictionary, at 1289 (29th ed. 2000).

at 251.] Her ECG was normal in March, 2001, as it was in other months. [See, e.g., AR at 207, 255, 260.] She had a normal chest x-ray in April, 2001. [AR at 240.] X-rays of her lumbar spine on October 5, 2001, revealed a gun shot wound, as well as a large spur on the calcaneus dorsal aspect, but no disc disease was observed, and her bones, joints and soft tissues were otherwise unremarkable. [AR at 228.] X-rays taken on October 25, 2001, revealed bullets at the right iliac crest of the lower abdomen. [AR at 222.] She had a normal venous doppler examination of both lower extremities. [AR at 225.] In December, 2002, a CT scan of plaintiff's brain was negative. [AR at 197.] Her physical examination in April, 2003, was negative. [AR at 180.]

Plaintiff testified at the hearing that she does not believe that she could work because she has "headaches or pain in [her] bones and . . . back." [AR at 298.] The pain is also in her heels, toes, and fingers. [AR at 299.] She is taking medication for her diabetes and arthritis, as well as for her headaches and stomach problems. She uses a cane because she cannot "stand the pain" in her heels, which is constant. She believes she can lift 6 or 7 pounds, but does not think she can lift a gallon of milk. If she does so, she feels pain in her lower back. Plaintiff can stand for about 20 minutes as long as she is holding on to something. [AR at 299-301.] She testified that she drives on Sundays, cooks, and does the laundry for her husband, but does not do other household chores, yard work, or shopping. [AR at 301-02.] Her doctor has told her to walk, which she used to be able to do but now cannot. Her doctor has not placed any restrictions on her other than recommending that she walk and not lift heavy objects. [AR at 303.]

The ALJ concluded that plaintiff's medical records do not show significant complaints or related treatment, abnormalities of gait, significant neurological deficits, continued restrictions in joint or back motion, more than conservative treatment, or significant abnormalities revealed on testing. Her physical examination in April, 2003, was negative. He notes that her doctors have recommended exercise to treat her medical conditions. [AR at 18.] The ALJ rejected the opinion of Dr. Fadeel that plaintiff is limited to medium work as being inconsistent with the "fairly unremarkable examination findings and other medical evidence," as well as the fact that state agency doctors concluded that she does not have a severe impairment. [AR at 18.]

B. **THE ALJ PRESENTED SPECIFIC AND LEGITIMATE REASONS TO REJECT THE OPINION OF PLAINTIFF'S EXAMINING PHYSICIAN**

Dr. Fadeel, plaintiff's examining physician, opined that plaintiff could lift and carry no more than 50 pounds occasionally and 25 pounds frequently, and could stand/walk and sit 6 hours in an 8 hour workday. [AR at 110.] With these limitations, plaintiff asserts that she would be limited to medium work,[3] and that she would thus be disabled under 20 C.F.R., Part 404, subpart P, App. 2 § 203.10. Joint Stipulation at 4. The ALJ rejected Dr. Fadeel's opinion, concluding that there is an absence of abnormal findings to support it. [AR at 18.] Plaintiff argues that the ALJ ignored relevant portions of the medical evidence in rejecting the opinion of Dr. Fadeel. Implicit in plaintiff's position is the proposition that if the ALJ had not improperly rejected Dr. Fadeel's opinions, a severe impairment would have been found, and a finding of disability would follow. The Court disagrees.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830. The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted). "The opinion of the treating physician, however, is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary

---

[3] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984))); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Id., 81 F.3d at 830. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Id. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. Id., 81 F.3d at 830-31.

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Opinions of a non-examining, testifying medical advisor may serve as substantial evidence only when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 750 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). "'A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'" Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984), quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984).

Here, the ALJ concluded that plaintiff has no severe impairments. In reaching his conclusion, the ALJ rejected the finding of Dr. Fadeel that plaintiff is limited to medium work. The reasons he provided to reject this opinion were specific and legitimate. First, Dr. Fadeel's limitations are not supported by the evidence in the record, and plaintiff has pointed to nothing that would warrant these limitations. Instead, plaintiff has exhibited a full range of motion, as well as normal x-rays, ultrasounds, a CT scan, physical examinations and ECGs. The ALJ relied on many of these "normal" findings to support his opinion. [AR at 17.] The ALJ's review of the medical records also revealed no evidence that plaintiff's hypertension or diabetes is "persistently uncontrolled," no evidence that those diseases have ever required hospitalization or emergency

1  room care, and no evidence of end organ damage. [AR at 17.] Plaintiff does not dispute these
2  conclusions. Rather, plaintiff argues that the ALJ ignored abnormal findings that support Dr.
3  Fadeel's limitations. Joint Stipulation at 5. These findings were considered, however. The only
4  "abnormal findings" set forth by plaintiff -- the presence of a bullet in plaintiff's abdomen, calcaneal
5  spurs, and osteoarthritis -- were all referred to by the ALJ [see AR at 18 (referring to Exhibit 7F
6  page 66, i.e., AR at 244 (osteoarthritis), and Exhibit 7F page 50, i.e., AR at 228 (spurs and
7  bullet))], and were deemed by him to be not "significant." Other than the presence of these
8  findings, plaintiff cites no other findings of conditions that would reduce her ability to lift, carry,
9  stand or walk, or the existence of evidence that any treating physician opined that any of these
10 findings would limit her capacity to function or would render her disabled. Indeed, the physicians
11 who treated plaintiff advised her to exercise [AR at 181, 201, 273], a recommendation that is at
12 odds with a finding of disability.
13      Next, two state agency physicians concluded that plaintiff is not limited by her impairments,
14 and that the impairments are not even severe. While plaintiff is correct that Dr. Rubenstein and
15 Dr. Gilpeer, the state agency physicians, did not have the benefit of certain treatment records that
16 were submitted after they rendered their opinions, neither did Dr. Fadeel refer to those records
17 when he made his assessment. [AR at 107; "[t]here are no medical records available for review."]
18 Thus, even if those later-submitted records contained evidence of a severe impairment, Dr.
19 Fadeel could not have relied on that evidence to support the limitations he imposed.
20 Nevertheless, those records do not support Dr. Fadeel's opinion, or undercut the conclusions of
21 the state agency physicians. Instead, they show normal test results and full range of motion.
22 Further, to the extent that Dr. Fadeel's opinion may have been based on plaintiff's own statements
23 to him, Dr. Fadeel did not find plaintiff particularly credible. Rather, he determined that she was
24 "faking problems with her gait," and that her use of a cane was "highly suspicious."[4] The ALJ
25 properly concluded that Dr. Fadeel's objective findings that plaintiff had a normal range of motion

---

[4] Plaintiff does not challenge the ALJ's finding that plaintiff's "allegations of 'excess' symptoms and functional limitations are unbelievable." [AR at 18.]

and a "fairly unremarkable examination" do not support his conclusion that she is restricted to medium work. This was a specific and legitimate reason, supported by the record, to reject Dr. Fadeel's opinion. See, e.g., Hixson v. Apfel, 2000 WL 1897293, *4-5 (N.D. Cal. Dec. 14, 2000) (ALJ's finding that treating physician's assessment of total disability was inconsistent with physician's own treatment notes is a specific, legitimate reason to reject that opinion).

It is the ALJ's function to resolve inconsistencies in the record. See Magallanes, 881 F.2d at 750 ("[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony."); see also Allen v. Heckler, 749 F.2d 577, 580 n.1 (9th Cir. 1984) ("questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."). The ALJ properly resolved any inconsistencies between Dr. Fadeel's opinion of medium work and the rest of the evidence in the record. The opinion must be affirmed.

## VI.
## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for remand is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 8, 2005

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE